**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY GREEN, CHERYL KILFOIL, HEATHER SINCLAIR, LISA DONOVAN, and MOLLY RAMIREZ, individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>      Defendant. | Case No. 1:20-cv-3878<br><br>Judge John F. Kness |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT**

Douglas M. Werman –
dwerman@flsalaw.com
Maureen A. Salas –
msalas@flsalaw.com
**Werman Salas P.C.**
77 W. Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

Travis M. Hedgpeth –
travis@hedgpethlaw.com
**The Hedgpeth Law Firm, PC.**
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727

Jack Siegel – jack@siegellawgroup.biz
**Siegel Law Group**
4925 Greenville, Suite 5009
Dallas, Texas 75206
Telephone: (214) 790-4454

# **TABLE OF CONTENTS**

I.      Introduction ............................................................................................. 1

II.     Factual and Procedural Background of the Litigation ............................. 2

III.    Summary of the Settlement Terms .......................................................... 2

        A.      The Settlement Collective and Class ............................................ 2

        B.      Administration of Settlement Notice ............................................ 3

        C.      No Class Members Objected to the Settlement and Two
                Requested Exclusion from the Settlement ..................................... 4

        D.      Settlement Payments ..................................................................... 4

        E.      Releases ......................................................................................... 5

        F.      Settlement Administration Costs ................................................... 6

IV.     Class Certification is Proper Under Rule 23 ........................................... 7

        A.      Numerosity is Satisfied ................................................................. 7

        B.      Commonality is Satisfied .............................................................. 8

        C.      Typicality is Satisfied ................................................................... 9

        D.      Adequacy is Satisfied .................................................................. 10

        E.      Rule 23(b) Requirements of Predominance and Superiority are
                Satisfied ...................................................................................... 11

                1.      Common Questions Predominate ..................................... 11

                2.      A Class Action is a Superior Mechanism ........................ 12

V.      The Parties Have Satisfied the Notice Requirements of Rule 23 and the Court's
        Notice Procedures Set Forth in the Preliminary Approval Order ..................... 13

VI.     The Court Should Grant Final Approval ............................................... 14

        A.      Final Approval is Appropriate Because the Settlement is Fair,
                Adequate, and Reasonable Under the Seventh Circuit's Settlement
                Factors ......................................................................................... 14

i

1.   The Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment Supports Final Approval ............................................................. 15

2.   The Complexity, Length, and Expense of Further Litigation Supports Final Approval ............................................................. 17

3.   The Lack of Objections to The Settlement Supports Final Approval.......... 18

4.   The Opinion of Class Counsel Supports Final Approval............................ 18

5.   The Stage of the Proceedings and Discovery Completed............................ 18

B.   Alternatively, or Cumulatively, Approval Should Be Granted According to the Fed. R. Civ. P. 23(e)(2) Factors................................................. 19

1.   Rule 23(e)(2)(A): The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)................................................................. 19

2.   Rule 23(e)(2)(B):  The Settlement Was Negotiated at Arm's Length........ 19

3.   Rule 23(e)(2)(C):  The Settlement Provides Adequate Relief to the Class Considering (i) Costs, Risks, and Delay of Trial and Appeal, (ii) Effectiveness of the Proposed Method of Distributing Relief to Class Members, and (iii) Terms of the Proposed Attorney Fee Award....... 20

4.   Rule 23(e)(2)(C)(iv):  Any Agreement required to be identified under Rule 23(e)(3)................................................................. 20

5.   Rule 23(e)(2)(D):  The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D) ................................ 20

VII.   The Service Payments for the Class Representatives and Opt-In Plaintiffs Are Reasonable ................................................................. 21

VIII.   The Settlement Meets the Standard for Approval Under the FLSA ................................ 23

IX.   The Payment of Class Counsel's Attorneys' Fees Equal to $323,750 and Litigation Expenses in the Amount of $10,695.14 are Reasonable.................................. 24

X.   Conclusion ................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarado v. Int'l Laser Prods., Inc.*
No. 18-cv-07756 (N.D. Ill. Jan. 24, 2020) ............................................................................ 24

*Amchem Prods. Inc. v. Windsor*
521 U.S. 591 (1997) ........................................................................................................ 11, 12

*Armstrong v. Bd. of Sch. Dist.*
616 F.2d 305 (7th Cir. 1980) ........................................................................................... 14, 18

*Beesley v. Int'l Paper Co.*
No. 06 C 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ................................................ 21, 22

*Bell v. PNC Bank*
800 F.3d 360 (7th Cir. 2015) .................................................................................................. 8

*Briggs v. PNC Fin. Services Grp., Inc.*
No. 15 C 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .............................................. 22

*Butler v. Am. Cable & Tel., LLC*
No. 09 C 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) .................................................... 24

*Carnegie v. Household Int'l, Inc.*
376 F.3d 656 (7th Cir. 2004) .................................................................................................. 11

*Cook v. Niedert*
142 F.3d 1004 (7th Cir. 1998) ............................................................................................... 21

*De La Fuente v. Stokely–Van Camp, Inc.*
713 F.2d 225 (7th Cir. 1983) ................................................................................................... 9

*Doe v. Guardian Life Ins. Co. of Am.*
145 F.R.D. 466 (N.D. Ill. 1992) ............................................................................................... 7

*EEOC v. Hiram Walker & Sons, Inc.*
768 F.2d 884 (7th Cir. 1985) ................................................................................................. 15

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) ............................................................................................................... 13

*Espenscheid v. DirectSAT USA, LLC*
688 F.3d 872 (7th Cir. 2011) ................................................................................................. 22

*Felzen v. Andreas*
    134 F.3d 873 (7th Cir. 1998) ............................................................... 14

*Gaspar v. Linvatec Corp.*
    167 F.R.D. 51 (N.D. Ill. 1996) ................................................................ 7

*Gautreaux v. Pierce*
    690 F.2d 616 (7th Cir. 1982) ............................................................... 18

*Healy v. International Brotherhood of Elec. Workers*
    No. 11 C 8892, 2013 WL 4494685 (N.D. Ill. Aug. 22, 2013) ................... 8

*Hispanics United of DuPage County v. Vill. of Addison, Illinois*
    988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................... 17

*In re AT&T Mobility Wireless Data Services Sales Litig.*
    270 F.R.D. 330 (N.D. Ill. 2010) ..................................................... 11, 17

*In re Domestic Air Tranp. Antitrust Litig.*
    148 F.R.D. 297 (N.D. Ga.1993) ........................................................... 16

*In re Mexico Money Transfer Litig.*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................. 17

*In re Newbridge Networks Sec. Litig.*
    No. 94 C 1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ..................... 16

*In re Ravisent Techs., Inc. Sec. Litig.*
    No. 00 C 1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................... 16

*Isby v. Bayh*
    75 F.3d 1191 (7th Cir. 1996) ............................................... 14, 15, 17, 18

*Jamie S. v. Milwaukee Pub. Schs.*
    668 F.3d 481 (7th Cir. 2012) ................................................................ 7

*Koszyk v. Country Fin. a/k/a CC Services, Inc.*
    No. 16 C 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ................. 22

*Kurgan v. Chiro One Wellness Centers LLC*
    No. 10 C 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014) ................. 8, 9

*Lazy Oil Co. v. Witco*
    95 F. Supp. 2d 290 (W.D. Pa.1997) ..................................................... 16

*Lively v. Dynegy, Inc.*
    No. 05 C 00063, 2007 WL 685861 (S.D. Ill. March 2, 2007) .................. 9

iv

*Lucas v. Vee Pak, Inc.*
No. 12 C 09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ............................................... 19

*Lynn's Food Stores, Inc. v. United States*
679 F.2d 1350 (11th Cir. 1982) ................................................................................................ 23

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*
834 F.2d 677 (7th Cir.1987) ..................................................................................................... 16

*Patterson v. Gen. Motors Corp.*
631 F.2d 476 (7th Cir. 1980) ...................................................................................................... 9

*Retired Chicago Police Ass'n v. City of Chicago*
7 F.3d 584 (7th Cir. 1993) .......................................................................................................... 9

*Reyes v. Buddha-Bar NYC*
No. 08 Civ. 2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009).............................................. 23

*Reynolds v. Beneficial Nat'l Bank*
288 F.3d 277 (7th Cir. 2002) .................................................................................................... 14

*Roberts v. Apple Sauce, Inc.*
No. 12-cv-830, 2014 WL 480425 (N.D. Ind. Sept. 25, 2014) .................................................. 23

*Rosario v. Livaditis*
963 F.2d 1013 (7th Cir. 1992) .................................................................................................... 8

*Sanchez v. Roka Akor Chicago LLC*
No. 14 C 4545, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) .................................................. 22

*Schmidt v. Smith & Wollensky LLC*
268 F.R.D. 323 (N.D. Ill. 2010)................................................................................................ 10

*Smith v. Adventist Midwest Health*
No. 16 C 7606, 2017 WL 8895628 (N.D. Ill. Nov. 17, 2017)..................................................... 8

*Smith v. Sprint Comm'ns Co.*
387 F.3d 612 (7th Cir. 2004) .................................................................................................... 11

*Soto v. Wings 'R Us Romeoville, Inc.*
No. 15 C 10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) ......................................... 22, 23

*Spano v. Boeing Co.*
633 F.3d 574 (7th Cir. 2011) ...................................................................................................... 8

*Swanson v. Am. Consumer Indus.*
415 F.2d 1326 (7th Cir. 1966) .................................................................................................... 7

*Synfuel Techs., Inc. v. DHL Express*
  463 F.3d 646 (7th Cir. 2006) .......................................................................................... 14

*Uhl v. Throroughbred Tech. & Telecomms., Inc.*
  309 F.3d 978 (7th Cir. 2002) ........................................................................................... 9

*Wahl v. Midland Credit Mgmt., Inc.*
  243 F.R.D. 291 (N.D. Ill. 2007) ...................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338, 131 S. Ct. 2541 (2011) ............................................................................. 7

*Yates v. Checkers Drive-In Restaurants, Inc.*
  No. 17 C 9219, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020) ............................................. 13

*Yon v. Positive Connections, Inc.*
  No. 04 C 2680, 2005 WL 628016 (N.D. Ill. Feb. 2, 2005) ................................................ 7

*Zolkos v. Scriptfleet, Inc.*
  No. 12 C 8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ..................................... 22, 23, 24

**Statutes**

Fair Labor Standards Act ............................................................................................ passim

Maine Employment Practices Law ........................................................................... 1, 8, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... passim

## I.     Introduction

Named Plaintiffs and Class Representatives Kimberly Green, Cheryl Kilfoil, Heather Sinclair, Lisa Donovan, and Molly Ramirez (herein "Class Representatives"), on behalf of themselves, Opt-in Plaintiffs Melissa Keller and Page Lindquist, and the Settlement Class Members they seek to represent, respectfully request that this Court grant Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement arising from their claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Maine Employment Practices Law, 26 M.R.S.A. § 664 *et seq* ("MEPL").

Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement Agreement is uncontested. As outlined below, the Settlement Agreement[1] is the product of arm's-length negotiations by informed Counsel and facilitated by a mediator. The Settlement represents a fair, adequate, and reasonable resolution of the parties' disputes as to liability, damages, and class certification under the MEPL. The Settlement is also a fair and reasonable resolution of a *bona fide* dispute under the FLSA.

The Settlement provides Class Members with an average Settlement Award of approximately $2,743, with the largest Settlement Award exceeding $13,000. The Settlement is also "non-claims made." The entire Net Settlement Amount will be distributed to all Class Members via U.S. Mail without requiring them to submit a claim form or take any other affirmative action. The Parties' Settlement Agreement is also supported by the members of the Settlement Class – none objected to the Settlement and only two individuals requested exclusion.

---

[1] All capitalized terms are defined in the Parties' Collective and Class Action Settlement Agreement previously filed on the docket at ECF No. 38-1 and attached hereto as Exhibit 2.

1

Accordingly, the Class Representatives respectfully request that the Court: (1) certify the Rule 23

MEPL class for settlement purposes; and (2) grant final settlement approval. A proposed Order is

attached hereto as Exhibit 1.

## II.    Factual and Procedural Background of the Litigation

A detailed summary of the litigation was provided in Plaintiffs' Memorandum of Law in

Support of Their Unopposed Motion for Preliminary Approval of Collective and Class Action

Settlement Agreement, for Approval of Settlement Notice, and for Scheduling of Final Approval

Hearing (ECF No. 38) and is not repeated here.

## III.   Summary of the Settlement Terms

### A.  The Settlement Collective and Class

In the Preliminary Approval Order (ECF No. 43), the Court certified the Maine Settlement

Class, defined as:

> All Named and Opt-in Plaintiffs who worked for Defendant in Maine and all persons identified in the mediation data produced by Defendant on January 15, 2021, who worked for Reliance Standard Life Insurance Company in Maine as a salaried, exempt STD Claims Examiner II and/or a salaried exempt LTD Claims Examiner I between July 1, 2014 and February 10, 2021.

*Id*. at ¶ 4.   The Court also approved for settlement purposes the FLSA Collective (the "FLSA

Settlement Class") comprised of:

> All Named and Opt-in Plaintiffs and all persons identified in the mediation data produced by Defendant on January 15, 2021, who worked for Reliance Standard Life Insurance Company as a salaried, exempt STD Claims Examiner II and/or a salaried exempt LTD Claims Examiner I, between November 9, 2017 and February 10, 2021.

*Id*. at ¶ 6.

The FLSA Settlement Class is comprised of 149 individuals and the Maine Settlement

Class is comprised of 130 individuals. See Ex. 2, Attachments A and B.[2]

### B. Administration of Settlement Notice

Pursuant to the Preliminary Approval Order, the Parties directed the Settlement Administrator, Analytics Consulting LLC ("Analytics"), to issue the Notice of Class Action Settlement to the members of the Settlement Class by the means approved by the Court and agreed to by the Parties in the Settlement. ECF No. 43, ¶ 10.

Consistent with the Settlement, Defendant produced to the Settlement Administrator, Analytics Consulting, LLC, a data file on June 24, 2021, containing records for the 202 individuals who were members of either the Maine Settlement Class, the FLSA Settlement Class or both. Ex. 3, Declaration of Settlement Administrator (Caroline P. Barazesh), ¶ 5 (herein "Ex. 3, Barazesh Decl., ¶ __"). The data included Class Members' names, employee ID, last-known mailing addresses, and estimated settlement awards. *Id.* Analytics then verified the most recent mailing address for Class Members using the National Change of Address database. *Id.* at ¶ 6.

On July 12, 2021, Analytics mailed via first class U.S. mail the approved Notice of Class Action Settlement to the most current mailing addresses of the 202 Class Members. Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1 to Barazesh Decl. The Notice included the estimated amount that the Class Member's payment would be. *Id.* Analytics also established a Toll-Free Number to provide assistance and information to Class Members, which was included in the Notice. *Id.* at ¶ 10.

As a result of the July 12, 2021, mailing, five Notices were returned to Analytics as undeliverable by the Post Office. Ex. 3, Barazesh Decl., ¶ 11. Analytics performed an advanced

---

[2] Attachment B to the Settlement Agreement identifies 132 Maine Settlement Class Members. Two members requested exclusion from the Maine Settlement Class, reducing the Maine Settlement Class to 130 members.

search using Experian, a reputable research tool, for Settlement Class Members whose Notices were returned as undeliverable prior to the initial opt-out deadline, in a further attempt to locate these individuals. *Id.* Analytics located four updated addresses and Notices were re-mailed promptly. *Id.*

One notice out of 202 Notices mailed was ultimately undeliverable, thus 99.5% of Settlement Class Members received notice. *Id*. at ¶ 11.

### C. No Class Members Objected to the Settlement and Two Requested Exclusion from the Settlement

Class Members were not required to file claims to receive their ratable portion of the Net Settlement Amount. Ex. 2, Settlement Agreement, § III.1. The deadline to opt out of the Settlement and submit objections was September 10, 2021. Ex. 3, Barazesh Decl., ¶ 12. Analytics received requests for exclusion from two Maine Settlement Class Members.[3] *Id*. Analytics did not receive any objections from Class Members. *Id*. at ¶ 13.

### D. Settlement Payments

The Settlement provides for the following payments to be made from the Gross Settlement Amount of $925,000 after Final Approval: (i) all Settlement Payments to Settlement Class Members; (ii) the Class Representatives' and Opt-in Plaintiffs' Service Awards; (iii) Class Counsel's Attorneys' Fees and Litigation Expenses; and (iv) the Settlement Administrator's settlement administration fees and expenses. Ex. 2, Agreement, §§ III.4.a.

---

[3] The two Class Members who sent requests for exclusions are members of both the Maine Settlement Class and FLSA Settlement Class. They will still be sent a Settlement Check for their portion of the Net Settlement Fund as FLSA Settlement Class Members, pursuant to §§ III.1, III.2.a, III.5.a of the Agreement. If they decline to endorse their checks, they will not consent to join the collective and will not release any claims or causes of action.

The settlement payments will be made pursuant to the formula described at § III.8 of the Settlement Agreement. The formula accounts for the number of weeks a Class Member worked during the relevant period and the Class Member's annual salary. *Id*., § III.8.a.

The Service Awards provided for in the Settlement Agreement include a Service Award in the amount of $5,000.00, each, to Class Representatives Kimberly Green, Cheryl Kilfoil, Heather Sinclair, Lisa Donovan, and Molly Ramirez; a Service Award in the amount of $1,000.00, each, to Opt-In Plaintiffs Melissa Keller and Page Lindquist. Ex. 2, Agreement, §§ I.8, I.24, III.5.b., III.5.c. These awards are in addition to the payments each individual will receive as his or her *pro rata* share of the Net Settlement Amount. The Notice of Settlement advised Class Members about the request for Service Awards. Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1.

Plaintiffs filed a Petition for an Award of Attorneys' Fees and Litigation Expenses. ECF No. 44. The Notice of Settlement advised Class Members about the request for payment of $323,750 in attorneys' fees and up to $15,000 for reimbursement of litigation expenses.[4] Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1.

**E. Releases**

The releases in the Settlement Agreement are limited. Maine Settlement Class Members will release the Released Parties from all claims or causes of action they have for unpaid overtime wages under Maine state law while they worked for Defendant as a salaried exempt STD Claims Examiner II and/or LTD Claims Examiner I during the Maine Release Period. Ex. 2, Agreement § III.2.b.

---

[4] Plaintiffs seek reimbursement of litigation expenses in the amount of $10,695.14.

5

FLSA Settlement Class Members who negotiate their settlement checks will release the Released Parties from all claims or causes of action they have for unpaid overtime wages under federal, state, and local law while they worked for Defendant as a salaried exempt STD Claims Examiner II and/or a LTD Claims Examiner I during the FLSA Release Period. *Id.*, §§ III.2.a, III.2.e. FLSA Settlement Class Members who do not negotiate their settlement checks will not release any claims. *Id.,* III.2.a.

The Class Representatives will release the Released Parties from all claims or causes of action they have for unpaid overtime wages under federal, state, and local laws. *Id.,* § III.2.c.

The term "Released Parties" means Defendant and Defendant's parent, subsidiary and affiliated companies, including but not limited to Delphi Financial Group, Inc., Tokio Marine Holdings, Inc., and Tokio Marine & Nichido Fire Insurance Co., Ltd. *Id.,* § I.28. Excluded from the releases are claims that any Settlement Class Members may have in *Weeks et al. v. Matrix Absence Management, Inc.,* Case No. 2:20-cv-884 (D. Ariz.), or any other claims they have against Matrix Absence Management, Inc. *Id.,* § III.2.d.

### F. Settlement Administration Costs

Analytics' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, are $9,421.00. Ex. 3, Barazesh Decl., ¶ 14. The cost of administering the Settlement will be paid from the Gross Settlement Amount. *Id*; Ex. 2, Settlement Agreement, § III.4.a

IV.     **Class Certification is Proper Under Rule 23[5]**

The Court has preliminarily granted Rule 23 class certification of the Maine Settlement Class for purposes of settlement. ECF No. 43, ¶ 5. To grant final settlement approval, the Court must find that the Maine Settlement Class satisfies the requirements of Rule 23. Nothing has changed to the certification analysis since preliminary approval, and as discussed below, the Maine Settlement Class meets all requirements for final certification.

A.  **Numerosity is Satisfied**

Rule 23(a)(1) requires a showing that the class size is such that "joinder of all members is impractical." Fed. R. Civ. P. 23(a). Impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill. 1992). To determine whether joinder is impracticable, courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966) These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 56 (N.D. Ill. 1996). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson*, 415 F.2d at 1333.

The final size of the Maine Settlement Class is 130.  The numerosity requirement is easily satisfied. *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 WL 628016, at *2 (N.D. Ill. Feb. 2, 2005) (certifying state law class where documents showed 39 employees owed overtime pay).

---

[5] For settlement purposes only, Defendant is not challenging Plaintiffs' assertions regarding the Rule 23 requirements.

### B. Commonality is Satisfied

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement depends on a common contention that is capable of class-wide resolution, thus allowing the truth of an issue central to the claim to be determined "in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011); *see also Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 497 (7th Cir. 2012) (citing *Wal-Mart*) (plaintiff must demonstrate that putative class members all "suffered the same injury").

Commonality does not demand that each class member have an identical claim. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011) Thus, some factual variation between class members will not defeat class certification. *Rosario v. Livaditis,* 963 F.2d 1013, 1017-18 (7th Cir. 1992). A single common question will suffice. *Bell v. PNC Bank,* 800 F.3d 360, 374 (7th Cir. 2015). Where the defendant engages in standardized conduct against the putative class members, the legality of which is an "outcome determinative issue," commonality is met. *Healy v. International Brotherhood of Elec. Workers,* No. 11 C 8892, 2013 WL 4494685, at *4 (N.D. Ill. Aug. 22, 2013)

Commonality is satisfied here. The common questions raised by the MEPL allegations in this case include: (1) what is the primary job duty performed by claims examiners; (2) did claims examiners' primary job duty involve the exercise of discretion and independent judgment on matters of significance; (3) whether Defendant had a policy of misclassifying employees in the claims examiner job positions as exempt from the overtime provisions of the MEPL; and (4) whether claims examiners were required by Defendant to work over 40 hours a week due to contractual deadlines and understaffing. Ex. 4, Salas Decl. ¶ 13. These common questions are sufficient to meet the Rule 23(a) commonality requirement. *See Smith v. Adventist Midwest Health,* No. 16 C 7606, 2017 WL 8895628, at *4 (N.D. Ill. Nov. 17, 2017) (commonality requirement met

8

when all clinicians shared the same compensation structure and were classified as exempt); *Kurgan v. Chiro One Wellness Centers LLC,* No. 10 C 1899, 2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014) (commonality satisfied when common question of liability turned on uniform exempt classification of employees).

### C.  Typicality is Satisfied

The Rule 23(a)(3) requirement of typicality is met here as well. "The question of typicality in Rule 23(a)(3) but this requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–597 (7th Cir. 1993) "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted). The fact that there is some factual variation among the class grievances will not defeat a class action. *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)

The factual and legal circumstances at issue in this suit involve Defendant's alleged misclassification policy and the denial of overtime pay.  The Class Representatives' claims arise from this alleged course of action, as do the Rule 23 claims of the Maine Settlement Class Members. These allegations therefore meet the typicality requirement. *See Kurgan,* 2014 WL 642092, at *7 (typicality met when plaintiffs' claims and the claims of all potential class members "arise from the same course of action by Defendant: the misclassification and the alleged failure to pay overtime.").

9

### D. Adequacy is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied when the class representatives have "the same interest and suffer the same injury as the class members." *Lively v. Dynegy, Inc.,* No. 05 C 00063, 2007 WL 685861, at *11 (S.D. Ill. March 2, 2007) citing *Uhl v. Throroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002). To determine whether the Class Representatives have met the adequacy requirement of Rule 23(a)(4), the Court must ask whether they: (1) have "antagonistic or conflicting claims with other members of the class;" (2) have "a sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (3) have counsel that is "competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (internal quotation marks and citation omitted).

There is no evidence here that the proposed Class Representatives, Named Plaintiffs Kilfoil, Sinclair, Donovan, and Ramirez, have interests that are antagonistic to Maine Settlement Class Members. Ex. 4, Salas Decl. ¶ 14.  Like all other Maine Settlement Class Members, the Class Representatives worked for Defendant as salaried, exempt disability claims examiners. The Class Representatives and Maine Settlement Class Members allegedly suffered the same alleged overtime violation—misclassification—and thus have sufficient interest in the outcome of the case. *Id.*

Furthermore, Plaintiffs' counsel are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts. Ex. 4, Salas Decl. ¶¶ 3-7; *see Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) ("[Douglas M. Werman and Maureen A. Salas] [are] qualified to serve as class counsel in the pending litigation

10

because they are highly experienced attorneys and have acted as class counsel in similar actions in federal and state courts."). Accordingly, the adequacy requirements have been satisfied.

### E.  Rule 23(b) Requirements of Predominance and Superiority are Satisfied

#### 1.  Common Questions Predominate

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Class-wide adjudication is appropriate here. Common questions of law and fact predominate because the Maine Settlement Class is limited to employees who worked for Defendant in a salaried, exempt LTD Claims Examiner I or STD Claims Examiner II job position and who were subject to the same systemized practice and standardized conduct that is alleged to have violated the MEPL. *In re AT&T Mobility Wireless Data Services Sales Litig.,* 270 F.R.D. 330, 344 (N.D. Ill. 2010).

In addition, certification for settlement purposes is further evidence that the predominance elements are satisfied. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 619-20 (1997); *Smith v. Sprint Comm'ns Co.,* 387 F.3d 612, 614 (7th Cir. 2004); *In re AT&T Mobility Wireless Data Services Sales Litig.,* 270 F.R.D. at 344. Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc.,* 521 U.S. at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

### 2. A Class Action is a Superior Mechanism

The element of superiority is met because the proposed class is the most efficient way to resolve the claims of Maine Settlement Class Members. *In re AT&T Mobility Wireless Data Services Sales Litig.,* 270 F.R.D. at 344. The Parties will be allowed to resolve the claims of 130 persons in one coordinated proceeding, thus conferring significant benefits upon each Maine Settlement Class Member. Defendant will also benefit by being spared the expense and potential inconsistency of scores of individual lawsuits.

When determining the superiority of proceeding as a class action, there are four (4) factors to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation regarding the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class. Fed. R. Civ. P. 23(b)(3).

Each of these four (4) factors weigh in favor of certifying the Maine Settlement Class. There has been no indication that the absent Maine Settlement Class Members would prefer to prosecute this action individually. There were no objections to the settlement after a successful notice program. This case does not interfere with any other pending litigation by any member of the class, as the release expressly excludes the release of any claims any Settlement Class Members may have in *Weeks et al. v. Matrix Absence Management, Inc.,* Case No. 2:20-cv-884 (D. Ariz.). The selection of forum is appropriate, as Defendant is an Illinois corporation. ECF No. 1, ¶ 23. Furthermore, Plaintiffs have requested that the Court certify the Class for settlement purposes only. Consequently, when certification is for settlement purposes only, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products,*

12

521 U.S. at 620. Settlement mitigates any difficulties in regard to the management of this matter. All of these factors make clear that the superiority requirement has been met.

## V. The Parties Have Satisfied the Notice Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order

In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Notice of Class Action Settlement met the requirements of federal law and due process and was the best notice practicable under the circumstances. ECF No. 43, ¶ 7. The Notice informed Class Members of: the pendency of the Class Action Litigation; the definition of the Settlement Classes; the alleged claims in dispute; the principle terms of the proposed Settlement; the estimated amount of the Class Member's individual recovery; information regarding attorneys' fees and costs; requests for service awards; the contact information for the Settlement Administrator and Class Counsel and the procedure for making inquiries; the applicable deadlines and other events, including the Final Approval Hearing; Class Members' individual rights under the Settlement, including the right to exclude themselves from the Settlement Class, and the manner and consequences for doing so; and the right to file any objections to the Settlement. *See* Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1 to Barazesh Decl.

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2)(B). *Id.* Where the names and addresses of class members are easily ascertainable, as they were here, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

The task on final approval is for the Court to determine whether "the notice plan achieved what it promised." *Yates v. Checkers Drive-In Restaurants, Inc.*, No. 17 C 9219, 2020 WL 6447196, at *2 (N.D. Ill. Nov. 3, 2020) quoting Federal Judicial Center ("FJC"), Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 7 (2010). Here, the notice plan was successful. Only one out of 202 Notices was ultimately undeliverable (0.5%). Ex. 3, Barazesh Decl., ¶ 11. The Parties' and the Settlement Administrator's efforts to effectuate notice to the class, as described above, meet the requirements of Rule 23(c)(2)(B).

**VI.     The Court Should Grant Final Approval**

> **A.   Final Approval is Appropriate Because the Settlement is Fair, Adequate, and Reasonable Under the Seventh Circuit's Settlement Factors**

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate, and not a product of collusion. *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted).

In determining whether a class settlement meets the standard for approval, the Seventh Circuit has directed courts to assess: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express,* 463 F.3d 646, 653 (7th Cir. 2006) citing *Isby,* 75 F.3d at 1199. The determination that a settlement is fair is left to the sound discretion of the trial court. *Armstrong v. Bd. of Sch. Dist.*, 616 F.2d 305,

313-14 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Each of these factors warrants final approval of the Settlement.

### 1. The Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment Supports Final Approval

One key consideration in evaluating a settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. In deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness but must "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *Id.* at 1197-98 (*quoting EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)).

Defendant has agreed to pay a reasonable sum to Class Members given the considerable risk they faced in establishing liability and damages at trial. The Parties expect there would be significant discovery and motion practice regarding the application of the administrative exemption raised by Defendant. Ex. 4, Salas Decl. ¶ 11. The applicability of this exemption would require significant factual development about the job duties Class Members performed, and it would create uncertainty for both sides. *Id.* Furthermore, because Defendant did not maintain time records while Settlement Class Members were classified as exempt, the parties would need to conduct extensive discovery over the number of hours worked by Class Members. *Id.* ¶ 12. Plaintiffs would have requested documents from Defendant in discovery that could serve as a proxy for hours worked. *Id.* Such records would include computer sign-in data, computer system data, facsimile logs, telephone logs and reports, time-stamped entries or documents, email meta

15

data, time studies, security logs, and other documents. *Id*. Plaintiffs risked a fact finder concluding they worked few overtime hours.

The Gross Settlement Amount represents 100% of the overtime wages owed to all Settlement Class Members if they worked 47 hours a week in each week they worked for Defendant as a STD Claims Examiner II and/or LTD Claims Examiner I during their applicable limitations period. Ex. 4, Salas Decl., ¶ 15.[6] Even *after* the payment of Class Counsel's Attorneys' Fees, Litigation Expenses, Service Payments to the Class Representatives and Opt-in Plaintiffs, and the costs of settlement administration, the Settlement Class Members are receiving 60% of the estimated overtime wages owed if they worked 47 hours in each week they worked during their applicable limitations period. *Id.*

This is significant consideration given that Defendant maintains that claims examiners were not unlawfully denied overtime wages and did not regularly work over 40 hours each week. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[7] The Settlement

_____

[6]    Defendant does not agree that any assumptions used by Class Counsel in conjunction with the settlement calculation methodology represent the actual number of hours worked by any Settlement Class Member or the proper calculation of the regular rate, but Defendant consents to Class Counsel's use of the settlement calculation methodology set forth in Section 8 of the Settlement Agreement for settlement purposes only. Ex. 2, Settlement Agreement, § III.8.

[7]    *See also Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga.1993) (2.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* No. 94 C 1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* No. 00 C

provides this significant value in a "non-claims made" settlement structure. Settlement Class Members will not be required to submit a claim form to receive their Settlement Payment. Ex. 2, Settlement Agreement, § III.1. The excellent result achieved supports final approval.

### 2. The Complexity, Length, and Expense of Further Litigation Supports Final Approval

By reaching a favorable settlement on behalf of the Opt-in Plaintiffs and Class Members prior to further motion practice and trial, the Class Representatives avoided the significant risks of failing to certify a class or collective, the potential decertification of a class or collective, and failing on the merits. *See Isby*, 75 F.3d at 1199. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010). Even if the Class Representatives had prevailed at trial, the case would have likely continued in appellate litigation. Additional litigation would only serve to increase the expenses incurred without reducing the risks facing Class Members. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). This factor thus favors final approval of the Settlement.

This Settlement is a fair, adequate and reasonable result for the Settlement Classes. Even without considering the remaining burden, expense, and risk for the Class Members going forward,

---

1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

the compensation provided to Class Members in this Settlement is reasonable. This militates in favor of approval of the Parties' Settlement.

### 3. The Lack of Objections to The Settlement Supports Final Approval

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Vill. of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected). Here, no Class Members objected to the Settlement. Ex. 3, Barazesh Decl., ¶ 13. In addition, only two Maine Settlement Class Members requested to exclude themselves from the Settlement following the issuance of Notice of Class Action Settlement. *Id*. at ¶ 12. Thus, this factor also militates in favor of approving the Settlement.

### 4. The Opinion of Class Counsel Supports Final Approval

Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200. Class Counsel are experienced in class action litigation and relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. Ex. 4, Salas Decl. ¶¶ 3-7, 16. Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions, Class Counsel's opinion is that the Settlement is fair, reasonable and adequate. *Id*., ¶ 17. This factor favors final approval of the Settlement.

### 5. The Stage of the Proceedings and Discovery Completed

This complex class action was resolved only after Defendant produced payroll data for the class, and after the Parties engaged in a mediation conference before Hunter R. Hughes, III, an

18

experienced class and collective action mediator. Ex. 4, Salas Decl., ¶ 10. The stage of litigation is such that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id*., ¶ 9. As a result, the Parties had all information that they needed to evaluate the strength of their claims. *Id.* The advanced stage of the litigation supports granting final approval.

### B. Alternatively, or Cumulatively, Approval Should Be Granted According to the Fed. R. Civ. P. 23(e)(2) Factors

#### 1. Rule 23(e)(2)(A): The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case vigorously on behalf of Settlement Class Members. Class Counsel's pre-mediation investigation in this case was robust. Ex. 4, Salas Decl., ¶ 9. Class Counsel conferred with and collected facts from all five Class Representatives and both Opt-in Plaintiffs. *Id.* Class Counsel also reviewed documents and data produced by Defendant, including job descriptions, a job duties matrix, dates of employment and salary history information for all potential class members, and information relating to the reclassification of the LTD Claims Examination I position. *Id.* Class Counsel had ample information to evaluate the strength of the Class claims. *Id.* As a result of Class Counsel's and the Class Representatives' sustained efforts, the parties reached a Settlement that provides meaningful monetary relief to Settlement Class Members, without a claims process, and with an appropriately-tailored release of claims.

#### 2. Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length

The Settlement was the result of a private mediation with experienced class and collective action mediator. Ex. 4, Salas Decl., ¶ 10. The action did not resolve at the mediation. *Id.* It was only through additional negotiations facilitated by the mediator in the days following the mediation

19

that the Parties reached an agreement. *Id.* In light of these efforts, the Settlement was the result of arms-length negotiations. *See Lucas v. Vee Pak, Inc.,* No. 12 C 09672, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017).

> **3. Rule 23(e)(2)(C): The Settlement Provides Adequate Relief to the Class Considering (i) Costs, Risks, and Delay of Trial and Appeal, (ii) Effectiveness of the Proposed Method of Distributing Relief to Class Members, and (iii) Terms of the Proposed Attorney Fee Award**

As explained above at pages 15-17, *supra*, the parties' settlement provides adequate relief to the class considering the proposed costs, risks and delay of trial and appeal. Also as explained above at pages 13-14, *supra*, the Class Notice process was successful. Finally, as Class Counsel explained in their request for fees and costs, ECF No. 44 at 6-7, their request for 35% of the Gross Settlement Amount as fees is in-line with the Seventh Circuit precedent and is equal to fees awarded in other class settlements, including similar wage and hour class settlements. And the Settlement provides for payment of any attorneys' fees after final approval, just like payment to Class Members. Ex. 2, Settlement Agreement, §§ III.5.d, III.7.i.

> **4. Rule 23(e)(2)(C)(iv): Any Agreement required to be identified under Rule 23(e)(3)**

The Settlement Agreement is Exhibit 2 to this Memorandum. It sets forth all terms of the Parties' agreement. There are no side agreements.

> **5. Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

Additionally, Settlement Class Members are treated equitably relative to each other. Each Settlement Class Member's damages are calculated using the same number of alleged overtime hours worked per week. Ex. 2, Agreement, § III.8.a. Also, Settlement Class Members' awards are

20

calculated on a *pro rata* basis based on their specific compensation and the number of weeks they worked within their applicable limitations period. *Id.,* § III.8.a-b. Thus, this factor favors preliminary approval of the Settlement.

In sum, applying either the Seventh Circuit's approval factors or the factors listed in Fed. R. Civ. P. 23(e)(2), all of those factors weigh heavily in favor of final settlement approval.

## VII. The Service Payments for the Class Representatives and Opt-In Plaintiffs Are Reasonable

Class Representatives Kimberly Green, Cheryl Kilfoil, Heather Sinclair, Lisa Donovan, and Molly Ramirez request Service Awards in an amount of five thousand dollars ($5,000) each, and Opt-In Plaintiffs Melissa Keller and Page Lindquist seek for Service Awards in an amount of one thousand dollars ($1,000) each. Ex. 2, Agreement, § III.9.e. These awards are in addition to the pro rata Settlement Payments they will receive under the Settlement. The Notice mailed to Class Members informed Class Members of the Service Payments that would be sought. Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1 to Barazesh Decl.  No member of the Settlement Class objected to the Service Payments. *Id.* at ¶ 13.

The named plaintiffs in class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Service Awards are well-suited to employment litigation because the named plaintiffs assume the risk that future

21

employers may look unfavorably upon them if they have filed suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

Here, the Named Plaintiffs provided factual information and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation, and the request awards are consistent with other awards in this District. *See Briggs v. PNC Fin. Services Grp., Inc.,* No. 15 C 10447, 2016 WL 7018566, at * 3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service awards to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Soto v. Wings 'R Us Romeoville, Inc.,* No. 15 C 10127, 2018 WL 1875296, at *3 (N.D. Ill. Apr. 16, 2018) (approving a $7,500 service award to the named plaintiff and $1,000 each to 8 opt-in plaintiffs); *Sanchez v. Roka Akor Chicago LLC,* No. 14 C 4545, 2017 WL 1425837, at *4 (N.D. Ill. Apr. 20, 2017) (approving a $7,500 service award to the named plaintiff).

Named Plaintiffs also took on substantial direct and indirect risks in filing this suit. In agreeing to file this class action suit in their name, they undertook the significant risk that, "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSAT USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2011) (internal citations omitted). Furthermore, Named Plaintiffs undertook the risk of retaliation from future employers. *See Beesley,* 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk v. Country Fin. a/k/a CC Services, Inc.*, No. 16 C 3571, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016).

Similarly, Opt-In Plaintiffs took action that benefitted the class by providing information to support the claims and increasing the chances to obtain conditional and class certification. The

22

$1,000 service awards for the two Opt-In Plaintiffs is reasonable. *See Zolkos v. Scriptfleet, Inc.,* No. 12 C 8230, 2015 WL 4275540, at \*3 (N.D. Ill. July 13, 2015) (approving incentive compensation in amount of $3,500 for four opt-in plaintiffs in a FLSA Action).

The requested Service Award of $27,000 is less than 3% of the Gross Settlement Amount. This percentage is well within the range other courts have found to be reasonable. *Soto,* 2018 WL 1875296, at \*3 (approving a total of $15,500 in service awards, representing approximately 3.4% of the total $450,000 settlement amount); *Zolkos,* 2015 WL 4275540, at \*3 (awarding a total of $144,000 in service awards, representing approximately 4.3% of the guaranteed settlement amount of $3,350,000); *Reyes v. Buddha-Bar NYC,* No. 08 Civ. 2494, 2009 WL 5841177, at \*5 (S.D.N.Y. May 28, 2009) (awarding a total of $7,500 each to three named plaintiffs, representing approximately 3 percent of the total $710,000 settlement amount).

## VIII. The Settlement Meets the Standard for Approval Under the FLSA

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982); *Roberts v. Apple Sauce, Inc.,* No. 12-cv-830, 2014 WL 4804252, at \*1 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" (internal citations omitted)).

Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.,* 679 F.2d at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be

23

approved. *Id.* at 1354. Given the Court applies essentially the same factors discussed above to determine whether to approve an FLSA settlement as a fair and reasonable resolution of a *bona fide* dispute, *Butler v. Am. Cable & Tel., LLC*, No. 09 C 5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011), the Court's finding that approval of the Rule 23 settlement is appropriate is sufficient to approve the settlement of the FLSA claims in this lawsuit. *Zolkos,* 2015 WL 4275540, at *3 (simultaneously granting final approval of a Rule 23 class and FLSA collective action settlement); *Alvarado v. Int'l Laser Prods., Inc.,* No. 18-cv-07756, p. 3-4 (N.D. Ill. Jan. 24, 2020) (Pallmeyer, C.J.), ECF No. 70, Order Granting Final Approval of Class and Collective Action Settlement (simultaneously granting final approval of a Rule 23 wage and hour and biometric privacy settlement and approval of a FLSA collective action settlement).

## IX. The Payment of Class Counsel's Attorneys' Fees Equal to $323,750 and Litigation Expenses in the Amount of $10,695.14 are Reasonable.

Class Counsel's request for reasonable attorneys' fees and litigation expenses awarded as a percentage of the total fund available to Class Members is detailed in Plaintiffs' Petition for an Award of Attorneys' Fees and Litigation Expenses. (ECF No. 44). Plaintiffs will not repeat the arguments in support of their request here.

The Settlement Notice informed Class Members that Class Counsel may apply to the Court for payment in an amount not to exceed $323,750 in fees and up to $15,000 in costs. Ex. 3, Barazesh Decl., ¶ 9, Exhibit 1 to Barazesh Decl. No Class Member objected to the request for fees and costs. *Id.* at ¶ 13.

In light of the absences of any objections, and the excellent result Class Counsel achieved for Class Members, Class Counsel requests that the Court award Attorneys' Fees in the amount of $323,750 and Litigation Expenses in the amount of $10,695.14.

## X.      Conclusion

The Settlement is a compromise that takes into account the complex factual and legal issues that confronted the Named Plaintiffs, the Opt-In Plaintiffs, and the Class Members in this case. It achieves an excellent result for them while eliminating the risk of decertification or loss at trial. The Settlement was achieved in good faith and through arm's-length negotiations and is not the product of fraud or collusion. The Parties have provided the Class with adequate notice of the terms and conditions of the Settlement in a manner intended to maximize the due process rights of the Class Members.

No Class Members objected to the Settlement. This demonstrates strong support for the Settlement. Class Counsel have analyzed the claims and issues herein, and believe that the Settlement is fair, reasonable, and adequate and in the best interests of the Class Members. Thus, the Court should grant final approval of the Settlement and enter the Parties' proposed final approval order, attached as Exhibit 1.

Respectfully submitted,

Dated:  October 8, 2021

/s/Maureen A. Salas
One of Plaintiffs' Attorneys